AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

☑ Original　☐


CLERK'S OFFICE
A TRUE COPY
Sep 29, 2023
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) Case No. 23-M-478 (SCD) |
| information associated with a certain Instagram account that is stored at | ) |
| premises owned, maintained, controlled, or operated by Meta Platforms, | ) |
| Inc. ("Meta"), an electronic communications service and/or remote | ) |
| computing service provider headquartered in Menlo Park, California. | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:　Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____ *(identify the person or describe the property to be searched and give its location)*:

　Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

　Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before ___10-13-23___ *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10:00 p.m.　☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ___Honorable Stephen C. Dries___ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*　☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:　___9-29-23. 3:00 pm___　_____Stephen C. Dries_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　*Judge's signature*

City and state:　___Milwaukee, WI___　___Honorable Stephen C. Dries, U.S. Magistrate Judge___
　　　　　　　　　　　　　　　　　　　　　　　　　　　　*Printed name and title*

## Return

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with Instagram account username:

- Instagram page under the URL:  https://www.instagram.com/realhaulin/

- Username: realhaulin

- Instagram Numeric ID: 178105826

(active on at least, but not limited to, August 2018 through the present, that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

**I.      Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or other information that has been deleted but is still available to Meta, Meta is required to disclose the following information to the government for each account or identifier listed in Attachment A:

A.      All business records and subscriber information, in any form kept, pertaining to the account, including:

1.      Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

2.      All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

3.      Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

4.      Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

5.      All advertising information, including advertising IDs, ad activity, and ad topic preferences;

6.      Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers, from May 10, 2023 to the present**;**

7.      Privacy and account settings, including change history; and

8.      Communications between Meta and any person regarding the account, including contacts with support services and records of actions taken;

B.     All content (whether created, uploaded, or shared by or with the account), records, and other information relating to videos (including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, from May 10, 2023 to the present;

C.     All content, records, and other information relating to communications sent from or received by the account from May 10, 2023 to the present, including but not limited to:

    1.     The content of all communications sent from or received by the account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

    2.     All records and other information about direct, group, and disappearing messages sent from or received by the account, including dates and times, methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

    3.     All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

    4.     All associated logs and metadata;

D.     All content, records, and other information relating to all other interactions between the account and other Instagram users from May 10, 2023 to the present, including but not limited to:

    1.     Interactions by other Instagram users with the account or its content, including posts, comments, likes, tags, follows (including unfollows, approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

    2.     All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

    3.     All contacts and related sync information; and

    4.     All associated logs and metadata;

E.     All records of searches performed by the account from May 10, 2023 to the present; and

F.     All location information, including location history, login activity, information geotags, and related metadata from May 10, 2023 to the present.

Meta is hereby ordered to disclose the above information to the government within 14 DAYS of issuance of this warrant.

**II. Information to be seized by the government**

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.SC. §§ 371, 641 (theft of government funds), 1343 (wire fraud), and 1344 (bank fraud), those violations involving Romaine Hawthorne and occurring on or after May 10, 2023, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

A.  Bank fraud or wire fraud or similar schemes involving fraudulent deposits, misuse of bank accounts, or counterfeit checks;

B.  Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the account owner;

C.  Evidence indicating the account owner's state of mind as it relates to the crime under investigation;

D.  The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s).

E.  The identity of the person(s) who communicated with the account holder [[about matters relating to wire fraud or bank fraud, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and

technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means



CLERK'S OFFICE
A TRUE COPY
Sep 29, 2023
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

information associated with a certain Instagram account that is stored at
premises owned, maintained, controlled, or operated by Meta Platforms,
Inc. ("Meta"), an electronic communications service and/or remote
computing service provider headquartered in Menlo Park, California.

)
)
)
)
)
)
)

Case No. 23-M-478 (SCD)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 371, 641 | Theft of Government Funds |
| 18 U.S.C. § 1343 | Wire Fraud |
| 18 U.S.C. § 1344 | Bank Fraud |

The application is based on these facts:

Please see attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Kristian P. Perales   Digitally signed by Kristian P. Perales
Date: 2023.09.28 17:03:24 -05'00'

*Applicant's signature*

Kristian P. Perales, Task Force Officer, FBI

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ TELEPHONE _____ *(specify reliable electronic means)*.

Date: 9-29-23

*Judge's signature*

City and state:  Milwaukee, WI

Honorable Stephen C. Dries, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Kristian P. Perales, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain Instagram account that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), an electronic communications service and/or remote computing service provider headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am a Task Force Agent with the Federal Bureau of Investigation, ("FBI") Milwaukee Area Safe Streets Task Force, and have been since April, 2020.  In August, 2000 Affiant graduated from the Wisconsin State Patrol Academy.  As an FBI TFO, Affiant has conducted numerous investigations of unlawful drug distribution, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846.  As part of these investigations, Affiant has conducted or participated in electronic and physical surveillance, surveillance of confidential informants, the introduction of confidential informants, the execution of search warrants, debriefings of cooperating sources, and reviews of taped conversations and drug records.  Through Affiant's training, education, and experience, Affiant became familiar with the manner

in which illegal drugs are transported, stored, and distributed, and the methods of payment for such drugs. In addition, Affiant has conducted follow-up investigations concerning the concealment of assets, money, and bank records, and the identification of co-conspirators through the use of ledgers, telephone bills and records, photographs, and bank checks, all as related to drug trafficking.

3. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.SC. §§ 371, 641 (theft of government funds), 1343 (wire fraud), and 1344 (bank fraud) have been committed by Romaine Hawthorne. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

6. Since June of 2020, case agents with the Federal Bureau of Investigation (FBI) in coordination with the Milwaukee Police Department (MPD) and the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), have been investigating identified members of the

violent street gang, Wild 100s, aka, Shark Gang, including Romaine Hawthorne, for federal firearms offenses, drug offenses, and fraud offenses.

7.      Case agents have reviewed the criminal history of Romaine Martell Hawthorne. Hawthorne is currently under indictment as of April 25, 2023, case number 23-CR-77-JPS, for possession of a machine gun with conversion device and now is prohibited from possessing firearms under Federal law.

8.      Case agents reviewed the publicly viewable posts on the "realhaulin" Instagram page and found photographs of Hawthorne with other people with what appear to be firearms.

9.      As of August, 2023, Romaine Hawthorne posted a photograph of himself on his Instagram page.  Romaine Hawthorne utilizes the Instagram name "Realhaulin".  Case agents know this as he posts pictures of himself, and agents have compared photos posted to that page

with photographs of Hawthorne in law enforcement data bases, including booking photos, that this is the same person.  Please see the below photograph.



10.    Romaine Hawthorne, along with 29 other co-defendants, was indicted on April 25, 2023, by the federal grand jury for the Eastern District of Wisconsin on charges of possession of a machine gun.  On May 10, 2023, state and federal agents executed arrest warrants on Hawthorne's co-defendants.[1] They were unable to locate Hawthorne. Since that time, Romaine

_____

[1] Although Hawthorne's name was redacted from the indictment while agents were searching for him, news of his co-defendants' arrest was very public. *See, e.g.*, https://www.wisn.com/article/video-fbi-raids-home-in-milwaukee-armored-vehicle-and-flash-bangs/43849738#; *see also*, "Members of Milwaukee Street Gang 'Wild 100's' Charged with Mail Fraud, Accused of Stealing Millions, plotting a Murder", MILWAUKEE JOURNAL SENTINEL, online, (May 10, 2023), available at: https://www.jsonline.com/story/news/crime/2023/05/10/30-members-of-milwaukee-street-gang-wild-100s-charged/70205906007/

Hawthorne evaded apprehension by law enforcement for approximately four months, and knew he was wanted (see below). While on the run, Romaine Hawthorne continued to post on his Instagram name "realhaulin" displaying his activities.

11.     In August of 2023, Romaine Hawthorne posted on his Instagram page a music video called "BigHaulin On The Run," which post was publicly viewable. Case agents believe this song to be about being on the run from arrest. Picture set forth below.







12.     Since being on the run, Romaine Hawthorne posted solicitations for mobile banking scams his Instagram "story". Based on their experience, including investigating other

members of the Wild 100's for similar fraudulent schemes, case agents know this scam to be one in which fraudsters use people's personal information for access to bank accounts. Many banks or credit unions (listed in picture below) will allow a portion of the funds to be available for withdrawal. After depositing a fraudulent check, the fraudster will then withdraw as much

money from ATMs as possible before the account or transaction gets shut down.  Picture set forth below:



13.     As an example, Romaine Hawthorne posted on his Instagram "story" a picture of a receipt, showing when a portion of the money will be available for withdrawal following his deposit:



14.     It should be noted that the above photographs appear to have been taken by a cellular device.

15.     As proceeds of these mobile banking scams were used for purchasing goods and services, Romaine Hawthorne posted pictures of himself with large amounts of US Currency,

and jewelry that were purchased with these fraudulently obtained funds.  It should be noted that according to the U.S. Department of Labor, no wages have been reported for Hawthorne since 2019:



## BACKGROUND CONCERNING INSTAGRAM[2]

16.     Instagram is a service owned by Meta, a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510. Specifically, Instagram is a free-access social networking service, accessible through its website

---

[2] The information in this section is based on information published by Meta on its Instagram website, including, but not limited to, the following webpages: "Privacy Policy," https://privacycenter.instagram.com/policy/; "Information for Law Enforcement," https://help.instagram.com/494561080557017; and "Help Center," https://help.instagram.com.

and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the target account(s) listed in Attachment A, through which users can share messages, multimedia, and other information with other Instagram users and the general public.

17. Meta collects basic contact and personal identifying information from users during the Instagram registration process. This information, which can later be changed by the user, may include the user's full name, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, credit card or bank account number, and other personal identifiers. Meta keeps records of changes made to this information.

18. Meta also collects and retains information about how each user accesses and uses Instagram. This includes information about the Internet Protocol ("IP") addresses used to create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

19. Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users can have the same usernames at the same time. Instagram users can create multiple accounts and, if "added" to the primary account, can switch between the associated accounts on a device without having to repeatedly log-in and log-out.

20. Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Facebook account. Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality. For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter account or post it to a connected Facebook account, or transfer an image from Instagram to a connected image printing service. Meta

maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Meta and third-party websites and mobile apps.

21.     Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers).  Users can also "block" other users from viewing their posts and searching for their account, "mute" users to avoid seeing their posts, and "restrict" users to hide certain activity and prescreen their comments.  Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

22.     Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Meta to access the contact lists on their devices to identify which contacts are Instagram users.  Meta retains this contact data unless deleted by the user and periodically syncs with the user's devices to capture changes and additions.  Users can similarly allow Meta to search an associated Facebook account for friends who are also Instagram users.  Users can also manually search for friends or associates.

23.     Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers, depending on privacy settings.  Users can customize their profile by adding their name, a photo, a short biography ("Bio"), and a website address.

24.     One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos.  Users can upload photos or videos taken with or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location.  These appear as posts on the user's profile.

Users can remove posts from their profiles by deleting or archiving them. Archived posts can be reposted because, unlike deleted posts, they remain on Meta's servers.

25. Users can interact with posts by liking them, adding or replying to comments, or sharing them within or outside of Instagram. Users receive notification when they are tagged in a post by its creator or mentioned in a comment (users can "mention" others by adding their username to a comment followed by "@"). An Instagram post created by one user may appear on the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

26. An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours. Stories are automatically saved to the creator's "Stories Archive" and remain on Meta's servers unless manually deleted. The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

27. Instagram allows users to broadcast live video from their profiles. Viewers can like and add comments to the video while it is live, but the video and any user interactions are removed from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

28. Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups. These messages may include text, photos, videos, posts, videos, profiles, and other information. Participants to a group conversation can name the group and send invitations to others to join. Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings. Senders can't view their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or

replayed, and if the recipient took a screenshot. Instagram Direct also enables users to video chat with each other directly or in groups.

29. Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform as well as on Facebook and other associated websites and apps. Instagram collects and retains payment information, billing records, and transactional and other information when these services are utilized.

30. Instagram has a search function which allows users to search for accounts by username, user activity by location, and user activity by hashtag. Hashtags, which are topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily searchable and can be "followed" to generate related updates from Instagram. Meta retains records of a user's search history and followed hashtags.

31. Meta collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Meta to personalize and target advertisements.

32. Meta uses information it gathers from its platforms and other sources about the demographics, interests, actions, and connections of its users to select and personalize ads, offers, and other sponsored content. Meta maintains related records for Instagram users, including information about their perceived ad topic preferences, interactions with ads, and advertising identifiers. This data can provide insights into a user's identity and activities, and it can also reveal potential sources of additional evidence.

33. In some cases, Instagram users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other

users.  Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

34.     For each Instagram user, Meta collects and retains the content and other records described above, sometimes even after it is changed by the user (including usernames, phone numbers, email addresses, full names, privacy settings, email addresses, and profile bios and links).

35.     In my training and experience, evidence of who was using Instagram and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

36.     For example, the stored communications and files connected to an Instagram account may provide direct evidence of the offenses under investigation.  Based on my training and experience, [[instant messages, voice messages, photos, videos, and documents]] are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

37.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Meta can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, subscriber information, [[messaging logs, photos,

and videos (and the data associated with the foregoing, such as date and time)]] may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

38. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

39. Other information connected to the use of Instagram may lead to the discovery of additional evidence. For example, associated and linked accounts, stored communications, photos, and videos may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, stored communications, contact lists, photos, and videos]can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

40. Therefore, Meta's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Instagram. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## **CONCLUSION**

41.     Based on the forgoing, I request that the Court issue the proposed search warrant.

42.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving the warrant on Meta.  Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

**<u>ATTACHMENT A</u>**

**Property to Be Searched**

This warrant applies to information associated with Instagram account username:

- Instagram page under the URL:  https://www.instagram.com/realhaulin/

- Username: realhaulin

- Instagram Numeric ID: 178105826

(active on at least, but not limited to, August 2018 through the present, that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

**Particular Things to be Seized**

## I. Information to be disclosed by Meta Platforms, Inc. ("Meta")

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or other information that has been deleted but is still available to Meta, Meta is required to disclose the following information to the government for each account or identifier listed in Attachment A:

    A.    All business records and subscriber information, in any form kept, pertaining to the account, including:

        1.    Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

        2.    All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

        3.    Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

        4.    Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

        5.    All advertising information, including advertising IDs, ad activity, and ad topic preferences;

        6.    Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers, from May 10, 2023 to the present**;**

        7.    Privacy and account settings, including change history; and

        8.    Communications between Meta and any person regarding the account, including contacts with support services and records of actions taken;

B.     All content (whether created, uploaded, or shared by or with the account), records, and other information relating to videos (including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, from May 10, 2023 to the present;

C.     All content, records, and other information relating to communications sent from or received by the account from May 10, 2023 to the present, including but not limited to:

   1.     The content of all communications sent from or received by the account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

   2.     All records and other information about direct, group, and disappearing messages sent from or received by the account, including dates and times, methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

   3.     All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

   4.     All associated logs and metadata;

D.     All content, records, and other information relating to all other interactions between the account and other Instagram users from May 10, 2023 to the present, including but not limited to:

   1.     Interactions by other Instagram users with the account or its content, including posts, comments, likes, tags, follows (including unfollows, approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

   2.     All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

   3.     All contacts and related sync information; and

   4.     All associated logs and metadata;

E.     All records of searches performed by the account from May 10, 2023 to the present; and

F.     All location information, including location history, login activity, information geotags, and related metadata from May 10, 2023 to the present.

Meta is hereby ordered to disclose the above information to the government within 14 DAYS of issuance of this warrant.

**II. Information to be seized by the government**

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.SC. §§ 371, 641 (theft of government funds), 1343 (wire fraud), and 1344 (bank fraud), those violations involving Romaine Hawthorne and occurring on or after May 10, 2023, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

A.      Bank fraud or wire fraud or similar schemes involving fraudulent deposits, misuse of bank accounts, or counterfeit checks;

B.      Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the account owner;

C.      Evidence indicating the account owner's state of mind as it relates to the crime under investigation;

D.      The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s).

E.      The identity of the person(s) who communicated with the account holder [[about matters relating to wire fraud or bank fraud, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and

technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.